1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11   JOEL HENDERSON,                                    CASE NO. 06cv1545 JAH (WMc)

12                                   Petitioner,        **REPORT AND**
                                                        **RECOMMENDATION OF**
         vs.                                            **UNITED STATES MAGISTRATE**
13                                                      **JUDGE DENYING PETITIONER'S**
14   DEBRA DEXTER, Warden,                              **WRIT OF HABEAS CORPUS**

15                                   Respondent.

16

17        JOEL B. HENDERSON ("Petitioner" or "Henderson"), a state inmate proceeding *pro se*

18   and *in forma pauperis,* challenges his San Diego Superior Court conviction with a habeas corpus

19   petition in this Court pursuant to 28 U.S.C. § 2254.  In his First Amended Petition for Writ of

20   Habeas Corpus ("Petition") filed July 13, 2007, Petitioner raises seventeen claims: (1) the trial

21   court abused its discretion by denying his motion for the release of confidential juror information;

22   (2) the trial court provided the jury with a misleading definition of the term "force"; (3) the trial

23   court failed to give a lesser included instruction on the crime of petty theft; (4) the trial court relied

24   on improper factors in aggravation and erroneously found no factors in mitigation; (5) "filing of

25   this petition along with a request it be consolidated with petitioner's pending direct appeal is the

26   appropriate procedure"; (6) trial counsel was ineffective for failing to request a jury instruction on

27   the lesser included offense of petty theft; (7) the trial court violated his Sixth and Fourteenth

28   Amendment rights under *Blakely v. Washington* by relying on factors not found by the jury during

sentencing; (8) this Court must remand for new sentencing if there was a violation of Petitioner's Sixth and Fourteenth Amendment rights under *Blakely*; (9) the trial court erred when it imposed a sentence enhancement based on facts in Petitioner's admission that did not indicate he was convicted of assault with a deadly weapon; (10) the trial court was required to submit prior convictions to a jury after *Blakely*; (11) appellate counsel was ineffective for failing to raise on appeal a claim for ineffective assistance of trial counsel re: inadequate fact investigation; (12) Petitioner was deprived of due process and an impartial jury due to jury coercion; (13) appellate counsel was ineffective for failing to raise on appeal a claim of jury coercion; (14) appellate counsel was ineffective for failing to raise on appeal "a claim challenging the prosecution's use of an improper inference"; (15) appellate counsel was ineffective for failing to raise on appeal a claim that trial counsel was ineffective for not clarifying at trial an empty gauge package was not connected to Petitioner; (16) appellate counsel was ineffective for not raising on appeal a claim that trial counsel was ineffective for failing to seek an instruction on the lesser included offense of petty theft; and (17) trial counsel was ineffective for failing to request a jury instruction on the lesser included offense of petty theft. [Doc. No. 28.]

# I.
## STATE COURT PROCEEDINGS

On August 27, 2002 Petitioner was charged in an information with: (1) one count of robbery (CAL. PENAL CODE § 211); (2) one count of possession of marijuana for sale (HEALTH AND SAFETY CODE § 11359); and (3) one count of transportation of more than 28.5 grams of marijuana (HEALTH AND SAFETY CODE § 11360(a)). (Lodgment 17 at 1.) The information further alleged Petitioner had served two prior prison terms, had suffered a prior serious felony conviction, and a prior strike. (Lodgment 17 at 3-4.) Prior to trial, the possession of marijuana count was dismissed. (Lodgment 17 at 2.)

On March 17, 2003, Petitioner waived his right to a jury trial on the prior convictions. (Lodgment 18, Vol. 4 at 583-84.) On March 20, 2003, a jury found Petitioner guilty of the second degree robbery count and not guilty of the transportation of marijuana count. (Lodgment 18, Vol. 5 at 613.) On March 24, 2003, Petitioner waived his right to a court trial on the priors, admitting the

1   prior felony convictions, prison priors, serious felony prior, and strike prior.  (Lodgment 18, Vol. 5

2   at 633-39.)  At the sentencing hearing on October 3, 2003, Petitioner was sentenced to fifteen years

3   in prison.  (Lodgment 18, Vol. 6 at 682-83.)

4        On October 3, 2003, Petitioner appealed to the California Court of Appeal.  Petitioner also

5   filed a petition for writ of habeas corpus.  On February 18, 2005, the California Court of Appeal

6   affirmed the judgment in the direct appeal and denied the petition for writ of habeas corpus.  *People*

7   *v. Henderson*, 2005 Cal. App. Unpub. LEXIS 1448.

8        On March 29, 2005, Petitioner filed his petition for review.  The California Supreme Court

9   denied the petition on May 11, 2002.

10

11

## II.
## FEDERAL PROCEEDINGS

12        Petitioner first filed a Petition for Writ of Habeas Corpus in this Court on July 31, 2006.  [Doc.

13   No. 1.] The petition included both exhausted and unexhausted claims.  Petitioner subsequently filed

14   a motion to stay and abey the petition so he could exhaust the unexhausted claims in state court.  [Doc.

15   No. 8.] While his first motion to stay and abey was under consideration, the previously unexhausted

16   claims were exhausted in state court.  [Doc. No. 19.]  Thus, this Court recommended his first motion

17   to stay and abey be denied as moot.  [Doc. No. 24.]

18        Petitioner had, however, also filed a second motion to stay and abey so he could exhaust two

19   additional claims in the state court.  [Doc. No. 22.]  Petitioner then filed a separate, second habeas

20   corpus petition in this Court.  [Doc. No. 27.]   The District Court, however, stated it was clear from

21   the document that Petitioner had meant to file the Petition as a First Amended Petition and

22   "contemporaneously request a stay and abeyance of the amended petition in order to exhaust state

23   court remedies with respect to his additional, unexhausted claims." [Doc. No. 27.]  Accordingly, on

24   July 11, 2007 an Order was entered directing the clerk to file the April 12, 2007 Petition as a First

25   Amended Petition. [Doc. No. 27.]

26        An Order denying Petitioner's first motion to stay and abey as moot and granting his second

27   motion to stay and abey was entered on September 20, 2007. [Doc. No. 32.] Petitioner notified the

28   Court that the unexhausted claims in his second motion to stay and abey were exhausted in state court

on November 15, 2007.  [Doc. No. 35.]  Respondents filed their Answer ("Answer") to Petitioner's

First Amended Petition on January 14, 2008. [Doc. No. 37.] Petitioner filed a Traverse ("Traverse")

on March 6, 2008. [Doc. No. 47.]

### III.
### STATEMENT OF FACTS

The following facts are taken directly from the California Court of Appeal's opinion in Petitioner's direct appeal:

"A. Prosecution Case

On August 12, 2002, Melanie Shawcroft, a loss prevention officer at a Wal-Mart store in San Diego, saw Henderson and his companion Sherrie Pulliam in the garden area of the store. Shawcroft had seen Pulliam in the store on prior occasions.

Shawcroft saw Henderson and Pulliam leave the garden area, where they had been looking at plants, and go to the automotive section of the store. Shaw unobtrusively followed them to the automotive section, where she saw Pulliam hand Henderson a packaged automobile gauge. Shawcroft saw Henderson, with Pulliam's help, open the package and put the gauge in his right back pocket.  Shawcroft also saw Henderson put the empty package back on the shelf.

Henderson and Pulliam left the store without going through any sales counters and without paying for the gauge.  Outside the store, Shawcroft, who by that time was accompanied by another Wal-Mart employee, Israel Gutierrez, attempted to stop Henderson and Pulliam.  She asked Henderson to return to the store with her and Henderson refused.  When Shawcroft touched Henderson on the wrist, he pushed her in the chest with both his hands.  Shawcroft is 5-feet, 6-inches tall and at the time weighed 112 pounds; Henderson is 5-foot, 9-inches tall and weighs 210 pounds.  Although Shawcroft had pulled out her handcuffs, she decided that she would not be able to get them on Henderson and put them away.  As Shawcroft put the handcuffs away, Pulliam told Shawcroft "Bitch, I'm going to kick your ass."

After Henderson pushed Shawcroft, he and Pulliam continued walking to their vehicle and Shawcroft again tried to grab Henderson's wrist. He again pushed Shawcroft in the chest with both his hands.  He then pulled his arm back and made a fist.  Because Shawcroft thought Henderson was about to hit her, she grabbed Henderson's shirt and attempted to pull herself as close to him as possible so that he would not be able to hit her with a complete swing of his arm.

At that point Gutierrez tried to intervene and grab Henderson's hand.  Henderson told Gutierrez: "I have a knife. Don't even try it."  Henderson then successfully pulled away from Shawcroft, but ripped his shirt in doing so.  Henderson and Pulliam got in their truck and left the store parking lot. Two small children were in the truck.

Shawcroft returned to the automotive section of the store and retrieved the empty package. She then called the police and gave them the license number of the truck Henderson was driving. Police went to the address of the registered owner of the truck, where they found Henderson, Pulliam and two children about 10 feet from the truck.  Shawcroft and Gutierrez went to the address and identified Henderson and Pulliam as the individuals involved in the theft and altercation outside the store.

Police found an instruction manual for a gauge kit in the cab of the truck and two knives in the

bed of the truck.  Police also found 284 grams of marijuana in a backpack that was in a trailer attached to the truck.

B. Defense Case

A Wal-Mart customer, Randolph Heilman, was in the parking lot at the time Shawcroft attempted to stop Henderson.  He saw Pulliam yell at Shawcroft and saw Henderson pull some papers from his pocket and try to show them to Shawcroft.  Heilman saw Shawcroft attempt to handcuff Henderson and saw Henderson raise his arm in what Heilman thought was a defensive motion.  Heilman then saw Shawcroft lunge at Henderson.  Heilman believed Shawcroft was the aggressor in the altercation. Heilman did see what he thought was a shiny torque driver in Henderson's back pocket.

Pulliam testified she and Henderson went to Wal-Mart to get plant "care cards" from the garden department of the store.  According to Pulliam, in addition to the care cards, Henderson took an instruction manual out of an empty package in the store.  She also testified Henderson had a tool he used on his chain saws in his back pocket.  Finally, Pulliam testified that when Henderson would not allow himself to be handcuffed, Shawcroft lunged at him and ripped his shirt."

*People v. Henderson*, 2005 Cal.App.Unpub LEXIS 1448 at *3-*7.

**IV.**
**STANDARD OF REVIEW**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  Under 28 U.S.C. § 2254, subsection (d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

When determining what constitutes "clearly established federal law" under section 2254(d)(1), federal courts look to United States Supreme Court holdings at the time of the state court's decision. *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003).  A state court's decision is "contrary to" clearly established United States Supreme Court precedent if (1) the state court applies a rule different from the governing law set forth in Supreme Court cases, or (2) the state court confronts a set of facts that are materially indistinguishable from a Supreme Court case, but still reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06, 412 (2000); *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003); *Clark v. Murphy,* 331 F. 3d 1062, 1067 (9th Cir. 2003).  A state court decision does not have to cite to or even demonstrate an awareness of clearly established Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision may involve an "unreasonable application" of Supreme Court precedent, "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08.  Alternatively, an unreasonable application may be found, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*; *see also Wiggins v. Smith,* 539 U.S. 510, 520 (2003); *Clark*, 331 F.3d at 1067.  An unreasonable application of federal law requires the state court decision to be more than incorrect or erroneous.  *Lockyer*, 538 U.S. at 75-76.  The state court's application must be "objectively unreasonable." *Id* at 76.  Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state-court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Van Lynn v. Farmon*, 347 F.3d 735 (9th Cir. 2003).  However, if the dispositive state court order does not "furnish a basis for its reasoning," the federal court considering the habeas petition must conduct an independent review of the record to determine whether the state court unreasonably applied controlling federal law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

# V.
## DISCUSSION

**1.      Claim One:  Juror Misconduct**

In Claim One, Petitioner alleges jury misconduct violated his Sixth Amendment right to an impartial jury and unanimous verdict. [Doc. 28 at 23.] Petitioner contends the trial court should have granted him a hearing to further investigate possible juror misconduct.  (Traverse at 9-10.)

Respondent contends: (1) the claim alleges only a misinterpretation of California state law and presents no federal question; and (2) even if it did present a federal question, the denial of the request was not contrary to clearly established federal law.  (Answer at 18.)

**i.        Facts underlying the claim: Juror 10**

The jury began deliberations on March 17, 2003.  (Lodgment 18, Vol. 4 at 579.)  On the morning of March 19, 2003, the jury sent the court Jury Note 3, informing the trial court that they were hung 11 to 1 on the robbery count.  (Lodgment 17 at 74; Lodgment 18, Vol. 5 at 590.)  The note stated Juror 10 was in disagreement and wanted to know if she could be excused, another juror believed Juror 10 was acting out of bias, and Juror 10 requested to see the trial judge.  (Id.)

The trial judge informed both defense counsel and the prosecution of the contents of the note, stating "if, as one of the other jurors indicates, this juror is not able to follow the law, that would be a basis for excusing this juror.  However, if the facts that have been found are different and she is applying the law to those facts as she finds them, then there is no basis for excusing this juror." (Lodgment 18, Vol. 5 at 592.)

The trial court first brought out Juror 7, the foreman, by himself.  (Lodgment 18, Vol. 5 at 593.)  The court asked the Juror 7 if he believed Juror 10 had been following the law as instructed and applying the law to the facts as instructed.  (Lodgment 18, Vol. 5 at 594.)  The foreman replied that he did.  (Lodgment 18, Vol. 5 at 594.)  Juror 7 was then sent back to the jury room and Juror 10 was brought out. (Lodgment 18, Vol. 5 at 594.)

The court first asked Juror 10 whether she had been applying the law to the facts as she had found them.  (Lodgment 18, Vol. 5 at 595.)  Juror 10 replied that she had.  (Lodgment 18, Vol. 5 at 595.)  Juror 10 stated she was concerned her conclusion was going to be the result of coercion.

(Lodgment 18, Vol. 5 at 596.)  The court told Juror 10 it did not want her decision to be the result of coercion, wanted her to "stand by the facts" as she had found them, there was nothing wrong with a hung jury, and she should not "capitulate to the others under duress."  (Lodgment 18, Vol. 5 at 596.) The trial court then asked Juror 10: "Can you stand firm to your position if you believe it is the right one?"  (Lodgment 18, Vol. 5 at 596.)  Juror 10 replied that she could and returned to the jury room to continue deliberations.  (Lodgment 18, Vol. 5 at 596.)  Shortly before the jurors were to be excused for the day, the court received Jury Note 7.  (Lodgment 17 at 82, 175.)  The note stated the jury was still hung 11 to 1 on the robbery charge, several jurors believed Juror 10 was voting in a biased manner, and Juror 10 would not change her mind.  (Lodgment 17 at 82, 175.)

The next morning, before the court could take any action, the jury sent Jury Note 8 stating they wished to continue deliberations.  (Lodgment 17 at 178; Lodgment 18, Vol. 5 at 611.)  Shortly thereafter, the jury returned a verdict of guilty on the second degree robbery count (count 1) and not guilty on the transportation of marijuana count (count 3).  (Lodgment 17 at 178; Lodgment 18, Vol. 5 at 612-13.) (Count 2 was dismissed on the motion of the prosecution. (Lodgment 17 at 84-85, 159.)

On April 15, 2003, Petitioner requested the release of the jurors' names and addresses so Petitioner could investigate the possible coercion of Juror 10 by the other jurors.  (Lodgment 17 at 86.) The trial court denied the motion, finding nothing to suggest jury misconduct.  (Lodgment 18, Vol. 5 at 645-46.)

### ii.     Clearly established federal law does not require a hearing for every allegation of jury misconduct

Petitioner states "the court abused it's [sic] discretion and violated petitioner's Sixth and Fourteenth Amend[ment] to a unanimous verdict of twelve jurors by failing to grant a hearing to determine if juror contact information should be released to defense."  (Traverse at 9-10.)  In Petitioner's direct appeal, the California Court of Appeal found the trial court did not abuse its discretion when it denied the motion.  *People v. Henderson*, 2005 Cal. App. Unpub. LEXIS 1448 at *2.  Under California Code of Civil Procedure § 237, a party must make a sufficient showing to support a reasonable belief jury misconduct occurred before a trial court orders the disclosure of the names and addresses of jurors.  *Id*. at *12.  The Court of Appeal found Petitioner did not make this

showing.  *Id.* at \*17.  The court stated the circumstances surrounding the deliberations "did not demonstrate anything more than the sort of strenuous disagreement that is common and indeed encouraged in our jury system."  *Id.*

Petitioner cites to *Remmer v. U.S.*, 347 U.S. 227, 230 (1956) and *Smith v. Phillips*, 455 U.S. 209, 215 (1982) for the proposition that clearly established federal law entitles him to a hearing. (Traverse 9-10.)  However, neither *Remmer* nor *Smith* support Petitioner's position.

*Remmer* dealt with the specific issue of jury tampering, an issue that did not arise in Petitioner's case.  *See, e.g., Tracy v. Palmateer*, 341 F.3d 1037, 1044 (9th Cir. 2003) (noting "*Remmer's* command that hearings are warranted in *every* case is unique to the tampering context, where the potential effect on the jury is severe."); *U.S. v. Dutkel*, 192 F.3d 893, 894-95 (9th Cir. 1999).  And *Smith* simply "leaves open the door as to whether a hearing is always required." *Tracy v. Palmateer*, 341 F.3d 1037, 1044 (9th Cir. 2003) ("*Smith* states that this 'may' be the proper course, and that a hearing is 'sufficient' to satisfy due process.")

Thus, "[a]n evidentiary hearing is not mandated every time there is an allegation of jury misconduct or bias.  Rather, in determining whether a hearing must be held, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." *Tracy v. Palmateer*, 341 F.3d 1037, 1044 (9th Cir. 2003)(citing *United States v. Angulo*, 4 F.3d 843, 846 (9th Cir. 1993); *United States v. Berry,* 627 F.2d 193, 197 (9th Cir. 1980)("The decision to conduct a hearing into alleged jury misconduct and to determine its extent and nature is discretionary")(citing United States v. Hendrix, 549 F.2d 1225, 1227-28 (9th Cir. 1977.))

Here, the trial court found no evidence of jury misconduct to warrant a hearing, and the Court of Appeal agreed, finding "Henderson did not establish the likely occurrence of any jury misconduct." *People v. Henderson* at \*16.  This Court agrees.  While Juror 10 may have expressed concern about the possibility of coercion by the majority, the evidence suggests Juror 10 was eventually persuaded to change her vote. When Juror 10 raised the issue with the court, she was told by the court not to give in to the pressure of the others, to stand by her beliefs, and that a hung jury was an acceptable result. (Lodgment 18, Vol. 5 at 595-96.)  When asked by the trial court whether she could "stand firm" in her position, Juror 10 replied she could.  (Lodgment 18, Vol. 5 at 595-96.)

Nevertheless, Petitioner contends a letter from Juror 10 received by the court proves Juror 10 came to a decision based upon the coercion of the other jurors.  In the letter, Juror 10 wrote she had been treated cruelly, was never allowed to present her thought processes, and would never know with certainty whether she reached a guilty verdict on the facts or whether she "had reached a point of 'giving up.'"  (Lodgment 18, Vol. 5 at 645-46.)  However, Juror 10 also wrote: "At the end of deliberations, one juror presented his thought process pertaining to the facts in a manner that was acceptable to me, and my analysis of the facts under the guidance of your instructions, and which could allow me to reach the same verdict as the rest of [the] jurors." (Lodgment 18, Vol. 5 at 645-46.) After considering Juror 10's letter in its totality, as well as the trial court's admonitions to Juror 10, the Court finds the state court's determination that an evidentiary hearing regarding juror misconduct was not mandated was not unreasonable or contrary to clearly established federal law.  *See Thompson v. Borg*, 74 F.3d 1571, 1574 (9th Cir. 1996) (noting that in cases of alleged juror misconduct where the trial judge "adequately cured the defect that no actual prejudice resulted, the error is harmless and the defendant is not entitled to the writ.")  Given the foregoing, it is **RECOMMENDED** the court **DENY** Petitioner's Claim One.

## 2.    Claim Two:  Definition of the Term "Force"

California Penal Code § 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  (CAL. PENAL CODE § 211.)  In Claim Two, Petitioner contends the trial court committed error when it gave Jury Instruction No. 1: "Force, as used in these instructions must be intentional and must be more than accidental contact."  [Doc. 28 at 32.]  Petitioner contends the instruction was misleading and an incomplete definition of the term "force" which  implied that "so long as the physical contact is not accidental, the contact constitutes force within the meaning of Penal Code section 211." (Traverse at 18.)  Petitioner contends use of the definition violated his Fourteenth Amendment right to due process.  [Doc. 28 at 39.]  Respondent contends Claim Two was rejected by the Court of Appeal based on an interpretation of state law and fails to raise a federal question. (Answer at 22.)

Petitioner argues, as he did in his direct appeal, that robbery should require "more force than necessary to retain the item" and Petitioner "simply used the degree of force necessary to prevent Shawcroft from taking back the gauge kit." [Doc. 28 at 37-38.]  The Court of Appeal rejected the argument, citing to *People v. Estes,* 147 Cal. App. 3d 23, 288-29 (1983), which held "[r]obbery occurs when defendant uses force or fear in resisting attempts to regain the property or in attempting to remove property from the owner's immediate presence regardless of the means by which the defendant originally acquired the property." *People v. Henderson* at *19.  The Court of Appeal also cited to *People v. Garcia*, 45 Cal. App. 4th 1242, 1246 (1996) (disapproved on other grounds), stating "[t]he degree of force is immaterial if it is more than the force needed to take property from the victim." *People v. Henderson* at *20-*21.  The Court of Appeal found "[i]n this factual context Jury Instruction No. 1, which required more than accidental touching, accurately described the nature of the force required under the prosecution's theory." *Id.* at * 22.

Whether robbery under the laws of California should require more force than necessary to retain an item or whether it should require force sufficient to retain the item is not an issue for the Federal courts to decide on habeas review. *Estelle v. McGuire,* 502 US 62, 67 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions.")  When a petitioner alleges a state jury instruction was improper, "[t]he only question for us is 'whether the ailing instruction so infected the entire trial that the resulting conviction violates due process.'" *Id.* at 72; *Cupp v. Naughten,* 414 U.S. 141, 147 (1973) ("Before a federal court may overturn a conviction resulting from a state trial in which the instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the *Fourteenth Amendment*.")  The challenged instruction "must not be viewed in artificial isolation, but must be viewed in the context of the overall charge." *Donnelly v. DeChristoforo,* 416 US 637, 645 (1974).

Although Petitioner attempts to analogize his position to that of a pickpocket who may have accidentally brushed against his victim, Petitioner did far more than simply brush up against loss prevention officer Shawcroft. Prosecution witnesses Shawcroft and Guiterrez testified that Petitioner pushed Shawcroft twice when she attempted to restrain him. At trial, defense counsel's position was

- 11 -

that Petitioner had not taken the gauge so any force used against Shawcroft was in self defense. Thus, during closing arguments, defense counsel made such statements as "all Mr. Henderson did was pull [Shawcroft] off with his forearm. That's all he did was shove her off." (Lodgment 18, Vol.4 at 541.) The testimony of the defense witnesses was consistent with the theory, painting Shawcroft as the aggressor but not disputing the fact that Petitioner physically resisted loss prevention officer Shawcroft. [1]   There is no dispute Petitioner used force. Thus, even if we assume for the sake of argument that Jury Instruction No. 1 was erroneous, it cannot be said that the instruction "so infected the entire trial that the resulting conviction violated due process." It is, therefore, **RECOMMENDED** the court **DENY** Petitioner's Claim Two.

### 3.      Claim Three: Petty Theft Instruction

In Claim Three, Petitioner claims the trial court erred by failing to give a lesser included offense instruction regarding petty theft. [Doc. 28 at 41.] Petitioner contends the trial court had the duty to instruct, *sua sponte*, on the lesser included offense because there was sufficient evidence to support a petty theft conviction. [Doc. 28 at 43.] Respondent contends Claim Three fails to present a federal question. (Answer at 23.)

In Petitioner's direct appeal, the Court of Appeal held the trial court had no duty to instruct on petty theft in Petitioner's case because there was no factual basis for the instruction. *People v. Henderson at *24.* The Court of Appeal quoted the closing argument of Petitioner's counsel in which she stated:

> "'The woman had no authority over him if he didn't take anything from the store, and there is no evidence, no credible evidence before you, except this woman who has so far lied a lot, that anything was taken from the store. She didn't have any authority over him, and with her acting out of control like that, he had a right to defend himself, and he had a right to leave the scene.'"

*Id.* The Court of Appeals noted "[t]here was no dispute Henderson resisted Shawcroft's attempt to restrain him." *Id.* Thus, "if a crime occurred the crime was robbery, not petty theft." *Id.* at *3.

The United States Supreme Court has held a defendant has a constitutional right to a lesser included offense instruction in a capital murder case. *Beck v. Alabama*, 447 U.S. 625, 638 (1980).

---

[1]Even Petitioner concedes to pushing loss prevention officer Shawcroft: "the contact of the push came later after she kept insisting I took something and tore my shirt off me." Traverse at 22.

1   The Court has, however, left unanswered the question of whether due process requires the giving of

2   lesser included offense instructions in a non-capital case. *Id.* at 638, fn. 14 ("We need not and do not

3   decide whether the Due Process Clause would require the giving of such instructions in a noncapital

4   case"). While the Circuits are split on the question, the Ninth Circuit has held "the failure of a state

5   court to instruct on a lesser offense fails to present a federal constitutional question and will not be

6   considered in a federal habeas corpus proceeding." *James v. Reese,* 546 F.2d 325, 327 (1976).

7   While this would normally be the end of the discussion, Petitioner argues the failure of the

8   court to instruct on the lesser included offense deprived him of a defense theory, thus violating the 14th

9   Amendment. [Doc. 28 at 54-55.] The Ninth Circuit has noted that a "defendant's right to adequate

10  jury instructions on his or her theory of the case might, in some cases, constitute an exception to the

11  general rule." *Solis v. Garcia,* 219 F.3d 922, 929 (9th Cir. 2000). Due process, however, only

12  requires an instruction be given when the evidence supports it. *Solis* at 929-30; *Hopper v. Evans*, 456

13  U.S. 605, 611 (1982); *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005).

14  On direct appeal, "[f]ailure to instruct on the defense theory of the case is reversible error if

15  the theory is legally sound and evidence in the case makes it applicable." *Beardslee v. Woodford*, 358

16  F.3d. 560, 577 (9th Cir. 2003) (citing *United States v. Scott*, 789 F.2d. 795 (9th Cir. 1986); *Solis v.*

17  *Garcia,* 219 F.3d 922, 928 (9th Cir. 2000) (denying claim of habeas petitioner and finding no error

18  in trial court's refusal to instruct on lesser included offenses where "there was not substantial evidence

19  to support" the charges.) However, on collateral review, a Petitioner must show "the alleged error had

20  a substantial or injurious effect on the verdict." *Beardslee* at 578 (citing *Anderson v. Calderon,* 232

21  F.3d 1053, 1090 (9th Cir. 2000)).

22      **i.    Petitioner is not entitled to relief because a petty theft instruction was not**
        **warranted by the evidence and any error was harmless**

23

24  Though Petitioner argues he was denied his theory of defense, this Court disagrees. Petitioner

25  never sought the lesser included offense instruction at trial.[2] Defense counsel did not request the

26

27  _____

28  [2] Petitioner claims the failure of trial counsel to seek the lesser included offense instruction constituted ineffective
    assistance. The issue is raised again as Claim Six and will therefore be considered below.

1  instruction even when given the opportunity to do so by the trial court.[3]  Defense counsel focused,

2  instead, on denying Petitioner had taken anything in the first place and stating any force used was in

3  self-defense.[4]  Thus, during closing arguments, defense counsel asked jurors to look beyond the force

4  used by Petitioner and to "[p]lease concentrate on the theft.  That's the main part of this case, and that

5  part of this case has not been proven at all."  ((Lodgment 18, Vol.4 at 548.)

6      Moreover, even if the instruction had been requested, Petitioner was not entitled to the

7  instruction.[5]  In California, theft is a lesser included offense of robbery that does not include the

8  element of force or fear.  *People v. DePriest,* 42 Cal. 4th 1, 50-51 (Cal. 2007) ("It is settled that the

9  crime of theft, whether divided by degree into grand theft or petty theft, is a lesser included offense

10  of robbery. (citation omitted) Robbery includes the added element of force or fear"); *People v. Turner,*

11  50 Cal. 668, 693 (Cal. 1990).  Thus, the only way a petty theft instruction would have been supported

12  by the facts is if Petitioner had not used force when taking the item.  However, in the instant case there

13  was no dispute Petitioner used force.[6]

14      Finally, even assuming, for the sake of argument, the trial court committed error by failing to

15  issue the lesser included offense instruction, Petitioner cannot show "the alleged error had a

16  substantial or injurious effect on the verdict."  *Beardslee v. Woodford*, 358 F.3d. 560, 577 (9th Cir.

17  2003).  Because it is clear force was used, there is no evidence in the record that would have permitted

18  the jury to convict Petitioner of petty theft.  Given the foregoing, it is **RECOMMENDED** that the

19  Court **DENY** Claim Three.

20  _____

21  [3] After the jury had retired for deliberations, the trial court conferred with counsel and stated that it had not given any
    lesser included offense instructions "because, one, if the jurors believe Ms. Shawcroft, there is a robbery.  If they

22  believe Ms. Pulliam, there is absolutely no crime that has been committed, either theft or robbery."  The court,
    however, stated it would reopen the proceedings, give the instruction, and give the parties additional time to argue

23  if they desired.  Counsel for defendant declined to request the additional jury instruction.  (Lodgment 18, Vol.5 at
    585-86.)

24
    [4]  Petitioner maintains this position in his Traverse.

25
    [5] Even Petitioner concedes he pushed Shawcroft after she attempted to restrain him: "[T]he contact of the push came later

26  after she kept insisting I took something and tore my shirt off me. (Traverse at 23.)

27  [6] Petitioner's argument that he was entitled to a petty theft instruction is based on the reasoning expressed in Claim Two.
    It is not that he disputes force was used, but that no more force than necessary to retain the item was used.  And, as

28  previously noted, it is not for this Court to determine whether robbery should require Petitioner to use more force than
    necessary to retain the item under California law.  See discussion of Claim Two, *supra.*

**4.     Claim Four Sets Forth No Constitutional Issues**

In Claim Four, Petitioner claims the trial court relied on improper aggravating factors and erroneously found no factors in mitigation. [Doc. 28 at 56.] Specifically, Petitioner contends the trial court: (1) incorrectly found aggravating circumstances under Rule 4.421(a)(8), 4.421(b)(1), and 4.421(b)(2) and (2) should have found mitigating circumstances under California Rule of Court 4.423(a)(6) and 4.423(a)(8); [Doc. 28 at 59-65.] Respondent argues Petitioner's Claim Four raises no constitutional question. (Answer at 24.) Instead, Respondent contends, the claim relies solely upon allegations that the trial court misapplied various California Rules of Court. [Doc. 28 at 59.]

Habeas relief is not available for errors in the interpretation or application of state law. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire, 502 US 62, 68 (1991).* To the extent Claim Four raises any constitutional issues, they are discussed in Claims Seven and Eight below. Thus, it is **RECOMMENDED** that Petitioner's Claim Four be **DENIED** for failure to raise a constitutional question.[7]

**5.     Claim Five Sets Forth No Constitutional Issues**

In Claim Five, Petitioner states: "the filing of this petition along with a request that it be consolidated with Petitioner's pending direct appeal is the appropriate procedure." [Doc. 28-2 at 3.] The claim is copied directly from Petitioner's previous state habeas petition, at which time Petitioner sought to consolidate his state habeas petition with his pending direct appeal to the California Court of Appeal. As such, the claim raises no reviewable issues by this Court and merits no further discussion. Thus, it is **RECOMMENDED** that Petitioner's Claim Five be **DENIED**.

**6.     Claim Six: Ineffective Assistance of Trial Counsel Claim**

In Claim Six, Petitioner claims trial counsel provided ineffective assistance by failing to seek a lesser included offense instruction on the offense of petty theft. [Doc. 28-2 at 5.] Respondent contends the claim is meritless because Petitioner cannot meet either prong of the two-part test for

---

[7] In Claim Seven and Eight Petitioner does raise a claim that the sentencing factors were improper under the Sixth and Fourteenth Amendments as articulated in *Blakely v. Washington*, 542 U.S. 296 (2004).

1    ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  (Answer

2    at 26.)

3          In *Strickland,* the United States Supreme Court set forth a two-part test for ineffective

4    assistance of counsel claims: (1) a defendant must show counsel's performance was deficient; and (2)

5    that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689 (1984).  The factors

6    need not be addressed in any particular order; if an issue can be "disposed on ground of lack of

7    sufficient prejudice, [there is] no need to turn to counsel's performance."  *Id.* at 697.

8          To show counsel's performance was deficient, the defendant "must show counsel's

9    representation fell below an objective standard of reasonableness" under prevailing professional

10   norms.  *Id.* at 688.  Judicial scrutiny of counsel's performance "must be highly deferential" and

11   "requires every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

12   circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

13   perspective at the time."  *Id.* at 689.

14         To show prejudice, "a defendant must show that there is a reasonable probability that, but for

15   counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

16   "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment

17   of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.  "The assessment of

18   prejudice should proceed on the assumption that the decision maker is reasonably, conscientiously,

19   and impartially applying the standards that govern the decision." *Id.* at 695.

20         Petitioner argues that he would have obtained a better outcome if defense counsel had sought

21   the lesser included offense instruction.  Petitioner states "it's reasonably probable had the jury been

22   instructed on the lesser included instruction the jury would have convicted petitioner of petty theft."

23   (Traverse at 22.)  He contends the disparity between his fifteen-year sentence and the potential seven-

24   year sentence he could have received under a petty theft conviction "reflects a significant prejudice."

25   (Traverse at 24.)  However, Petitioner was not prejudiced by his counsel's failure to request a petty

26

27

28

theft instruction because petty theft, as defined in California, requires the absence of force or fear.[8] In the instant case, Plaintiff was not entitled to an instruction on petty theft because there was no question that force had been used.  It is not reasonably probable that a more favorable result would have occurred for plaintiff because the petty theft instruction was not available in this case based on the evidence presented.  Furthermore, it was not deficient for trial counsel to request a lesser-included petty theft instruction that was futile. Given the foregoing, it is **RECOMMENDED** that the Court **DENY** Petitioner's Claim Six for ineffective assistance of trial counsel.

### 7.    Claims Seven and Eight: Sentencing

At Petitioner's sentencing hearing, the trial judge found four aggravating circumstances: planning of the crime (CAL. RULES OF COURT, Rule 4.421(a)(8)), violence in carrying out the crime (Rule 4.421(b)(1)), numerous adult convictions of increasing seriousness (Rule 4.421(b)(2)) and prior prison terms (Rule 4.421(b)(3)). [Lodgment 18, 681-682]*; People v. Henderson,* 2005 Cal. App. Unpub. LEXIS 1448, at *25.

In Claim Seven, Petitioner claims his upper term sentence violates the Sixth and Fourteenth Amendment under *Blakely v. Washington* , 542 U.S. 296 (2004) because the trial court used factors not found by a jury to give him an aggravated term.  [Doc. 28-3 at 7, 28.]  Similarly, in Claim Eight, Petitioner contends his case should be remanded for a new sentencing hearing because California's determinate sentencing law is subject to the holding in *Blakely v. Washington*.  [Doc. 28-3 at 33.] Respondent contends the claim is without merit because, even assuming error under *Blakely* occurred, the California Court of Appeal's determination that Petitioner's sentence was harmless in light of two valid factors in aggravation was not an unreasonable application of, nor contrary to, clearly established United States Supreme Court precedent.  (Answer at 27, 29.)

Assuming *arguendo* that California's determinate sentencing law did not conform to *Blakely*, the California Court of Appeals stated any *Blakely* error in Petitioner's case was harmless. [Lodgment 1, 18-19]; *People v. Henderson* at *25-26.  The Court of Appeals found "the fact the trial court also

---

[8]While the claim was not raised in Petitioner's direct appeal, the Court of Appeal did note in its opinion that Petitioner raised the claim in a petition for writ of habeas corpus.  In a footnote, the court stated it had denied the petition in a separate order "[b]ecause there was no factual basis for such an instruction, defendant was not prejudiced by his counsel's failure to ask for one."  *People v. Henderson,* 2005 Cal. App. Unpub. LEXIS 1448, at *23, fn.5.

relied upon two factors which arguably required jury findings did not prejudice Henderson.   In light of Petitioner's admissions re: prior convictions, the trial court was free to rely upon the admitted circumstances under *Blakely* in sentencing him, even though the prior convictions had not been found by the jury. Because the trial court found no mitigating circumstances, it is clear the trial court would have and could have imposed the upper term based on Henderson's prior convictions and prior prison term alone." *Id.* at *26.

In *Apprendi v. New Jersey*, the Court was faced with the question of whether the Sixth Amendment and Due Process prohibited judges from determining, by a preponderance of the evidence, facts to authorize sentencing enhancements. *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  The Court set out a bright line rule, stating: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

In *Blakely v. Washington*, the Court held "the relevant 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303 (2004).  In *Cunningham v. California*, the Supreme Court found "the DSL, by placing sentence-elevating factfinding within the judge's province, violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments." *Cunningham v. California*, 127 S. Ct. 856, 864 (2007). The Court cited to *Apprendi* and *Blakely*, stating "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." *Id.* at 864-65.

Given *Apprendi's* exception for prior convictions, the decision of the state appellate court upholding Petitioner's upper term sentence was not contrary to, nor an unreasonable application of, clearly established federal law.  Petitioner admitted his prior prison term, a factor that did not require a jury finding under *Apprendi*.  Even Petitioner concedes "the court was constitutionally permitted to rely on [Petitioner's] prior prison terms as a basis for imposing a sentence in excess of the middle term."  [Doc. 28-3 at 31.]

Petitioner, however, argues it was error under *Blakely* for the court to also find: (1) Petitioner's crimes were numerous and of increasing seriousness; (2) Petitioner had engaged in violent conduct constituting a serious danger to society; and (3) that the crime was planned.  [Doc. 28-3 at 23-26.] Petitioner contends the jury could have found none of the three above factors were present and, thus, "it was not harmless beyond a reasonable doubt to withdraw those three factors from the jury's consideration."[9]  [Doc. 28-3 at 28.]

Assuming *arguendo* that the trial court committed error under *Blakely* by making additional findings, any such error was harmless.  The United States Supreme Court has noted *Blakely* errors are subject to the harmless error standard.  *Washington v. Recuenco,* 126 S.Ct. 2536, 2553 (2006) ("[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error").  Under California law, the finding of a single aggravating factor warrants the imposition of an upper term sentence.  *People v. Nevill,* 167 Cal App. 3d. 198, 202 (Cal. App. 4th Dist. 1985); *People v. Black*, 41 Cal. 4th 799, 813 (Cal. 2007) ("Black II").  Thus, because Petitioner's prior prison terms were sufficient to expose him to the upper term sentence, any error committed by relying on additional, impermissible findings was harmless.  *See, e.g., Sandoval v. Sec'y of the Cal. Dep't of Corr. & Rehab.,* 2008 U.S. Dist. LEXIS 20122 at *41-*43 (S.D. Cal. 2008); *Jordan v. Evans*, Jordan v. Evans, 2007 U.S. Dist. LEXIS 68222 at *31-*32 (S.D. Cal. 2007).   For the foregoing reasons, it is **RECOMMENDED** the court **DENY** Petitioner's Claim Seven and Eight.

**8.     Claim Nine: Sentence Enhancements**

In Claim Nine, Petitioner argues the court did not specify whether his § 245(a)(1) conviction was for assault with a deadly weapon, which constitutes a serious felony and can lead to sentence enhancements, or for assault by means likely to produce great bodily injury, which does not constitute a serious felony and triggers no enhancements.  [Doc. 28-3 at 36, 38.]  Petitioner contends the trial

---

[9] While Petitioner contends the finding that his crimes were numerous and of increasing seriousness was a violation of *Blakely*, the scope of the prior conviction exception has never been clearly defined by the United States Supreme Court or the Ninth Circuit.  Thus, some courts, such as the California Supreme Court, have held the exception includes "related issues that may be determined by examining the records of the prior convictions" such as whether a defendant's prior convictions are numerous or of increasing severity.  *People v. Black*, 41 Cal. 4th 799, 814 (Cal. 2007) ("Black II"); *People v. McGee,* 38 Cal, 4th 682, 706 (Cal. 2006). *See also, Kershaw v. Harrison,* 2008 US Dist. LEXIS 8464 (E.D. Cal. 2008); *Sandoval v. Sec'y of the Cal. Dep't of Corr. & Rehab.,* 2008 U.S. Dist. LEXIS 20122 (S.D. Cal. 2008); *Bournes v. Adams,* 2008 U.S. Dist. LEXIS 21695 (C.D. Cal. 2008).

court improperly imposed a sentence enhancement based on his 1992 conviction for a violation of Penal Code § 245(a)(1).  [Doc. 28-3 at 34.]  Petitioner was charged with both a strike and serious felony prior as a result of the § 245(a)(1) conviction. (Lodgment 17 at 1.)  Petitioner waived his right to a trial on all prior offense enhancements and admitted the priors. (Lodgment 18, Vol. 5 at 633-39.)  Respondent argues Petitioner's claim that his prior conviction under Penal Code section 245(a)(1) was insufficient to constitute a serious felony does not allege a constitutional violation for consideration on habeas review.  [Doc. 37-3, 21:1–2.]

On direct appeal, the Court of Appeal noted Petitioner "expressly waived his right to jury trial on the priors well before he actually pled to them.  Thus, even if there had been no plea, in light of his earlier jury waiver the trial court could have, without a jury and consistent with *Blakely*, found that he had suffered a prior serious felony." *People v. Henderson* at *26-27.  The court further noted "Henderson's express plea to the information can only be interpreted as an admission that his assault conviction was a conviction which qualified as a prior serious felony.  Because only an assault with a deadly weapon qualifies as a serious felony, his plea must be interpreted as an admission to commission of that crime." *Id.* at 28.  The Court of Appeal then cited to *People v. Guerrero* for the "well-established principle that a guilty plea constitutes an admission of all the elements of a charged offense." *Id.*

The Court of Appeal decision was not an unreasonable application of, nor contrary to, clearly established federal law.  In *Almendarez-Torres*, the Supreme Court stated "the Court said long ago that a State need *not* allege a defendant's prior conviction in the indictment or information which alleges the elements of an underlying crime . . . [t]hat conclusion followed, the Court said, from '*the distinct nature of the issue*,' and the fact that recidivism 'does not relate to the commission of the offense*, but goes to the punishment only*, and therefore . . . may be subsequently decided.' (emphasis added). The Court has not deviated from this view." *Almendarez-Torres v. U.S.*, 523 U.S. 224, 243-44 (1998).  The *Apprendi* Court also discussed *Almendarez-Torres* in some detail, noting "*Almendarez-Torres* turned heavily upon the fact that the additional sentence to which the defendant was subject was 'the prior commission of a serious crime'" and "[b]oth the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the

- 20 -

accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." *Apprendi v. New Jersey*, 530 U.S. 488 (2000); *see, e.g., United States v. Cruz-Escoto,* 476 F.3d 1081 (9th Cir. 2007) (holding finding of two prior felonies by trial court did not require defendant's admissions nor jury finding); *U.S. v. Quintana-Quintana*, 383 F.3d 1052 (9th 2004) (upholding sentence enhancement based on finding of prior assault with deadly weapon conviction where the prior had not been admitted or submitted to a jury); *Ernest v. Runnels,* 2007 U.S. Dist. LEXIS 82046 (N.D. Cal. 2007) (stating "[d]etermination about prior convictions, including whether a prior conviction carried a prison term or counts as a "strike" are sentencing factors that fall within the *Almendarez-Torres* exception to *Apprendi*").

For the foregoing reasons, it is **RECOMMENDED** the court **DENY** Petitioner's Claim Nine.

**9.     Claim Ten: The *Blakely* and *Almendarez-Torres* Decisions**

In Claim Ten, Petitioner contends that, "after *Blakely*, even prior convictions must be submitted to the jury or encompassed in the defendant's guilty plea." [Doc. 28-3 at 39.] Petitioner also argues *Blakely* overruled the Supreme Court's decision in *Almendarez-Torres v. United States* which held there is no Sixth Amendment right to jury trial on the fact of a prior conviction. Respondent contends the claim is meritless. (Answer at 31.)

This Court finds nothing in the *Blakely* decision to suggest *Almendares-Torres* has been overruled. The Ninth Circuit has noted "[i]n *Blakely*, the Supreme Court explicitly preserved its prior holding in *Apprendi v. New Jersey* (citation omitted) and *Almendarez-Torres v. U.S.* (citation omitted) that a sentencing enhancement based on a defendant's prior conviction does not have to be presented to a jury." *U.S. v. Quintana-Quintana*, 383 F.3d 1052 (9th 2004) (rejecting argument that *Blakely* required fact of a prior conviction to be proved to a jury beyond a reasonable doubt); *United States v. Yanez-Saucedo,* 295 F.3d 991, 993 (9th Cir. 2002)("contrary to Yanez-Saucedo's argument, '*Apprendi* did not overrule *Almendarez-Torres*'").

Subsequent decisions of the United States Supreme Court similarly indicate that *Apprendi's* exception remains undisturbed. *See, e.g. Cunningham v. California*, 127 S. Ct. 856, 860 (2007) ("the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to

- 21 -

impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant"); *Rita v. United States,* 127 S. Ct. 2456, 2466 (2007) (discussing the Court's Sixth Amendment cases).  Therefore, it is **RECOMMENDED** the court **DENY** Claim Ten.

**10.    Claim Eleven:  Ineffective assistance of appellate counsel for failing to raise the claim trial counsel was ineffective**

In Claim Eleven, Petitioner contends appellate counsel was ineffective for not raising on appeal a claim that trial counsel failed to conduct a proper investigation and, thus, rendered ineffective assistance.  [Doc.28-4 at 1.]  Respondent contends Petitioner is not able to show prejudice under *Strickland* because Petitioner's assertions are unsupported. (Answer at 32.) Specifically, Respondent contends Petitioner failed to support his claim with "declarations or other proffered testimony establishing both the substance of the omitted evidence and its likelihood for exonerating the accused" as required in California. (Answer at 32.)

**i.    Petitioner not entitled to relief because he has shown neither deficient performance nor prejudice as required under *Strickland***

The two prong test of *Strickland* applies to ineffective assistance of appellate counsel claims as well as ineffective assistance of trial counsel claims.  Here, as Respondent notes, Petitioner's assertion that his trial counsel's investigation was deficient is unsupported by any evidence.  The failure of counsel to investigate the areas Petitioner mentions, alone, does not show trial counsel's performance was deficient.  "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for the reasonableness in all the circumstances, applying a heavy deference to counsel's judgments." *Strickland v. Washington*, 466 U.S. 668, 691 (1984).  Petitioner has not shown trial counsel failed to do so.

Petitioner also fails to show prejudice.  Petitioner contends there were three witnesses in particular trial counsel should have called:  (1) Detective Nguyen; (2) Mr. Thompson; and (3) the young daughter of Mr. Heilman. [Doc. 28-4 at 6-7.] Petitioner believes Detective Nguyen could have testified regarding a gauge that Petitioner believes the detective to have impounded. [Doc. 28-4 at 1-2,

6, 13-15, 17-23.] However, upon reviewing the record, it is clear that no such gauge was impounded. (*See* Claims 14 and 15, *infra*).

Petitioner also contends Mr. Thompson could have testified that Petitioner was at Walmart picking up plant care cards. [Doc. 28-4 at 7-8.] However, trial counsel elicited testimony explaining Petitioner's presence at Walmart from defense witness Pulliam and presented Mr. Thompson's work order as evidence. As for the young daughter of Mr. Heilman, Petitioner contends she possibly could have testified that the petitioner had only his own tool in his back pocket. [Doc. 28-4 at 7-8.] However, as Petitioner himself notes, she was occupied at the time speaking with Petitioner's daughter some distance from the scene. [Doc. 28-4 at 7-8.]

Petitioner also contends trial counsel should have subpoenaed surveillance video from the Walmart. [Doc. 28-4 at 4-6.] However, testimony from loss prevention officer Shawcroft establishes the camera on the particular aisle where the gauge was taken was pointed away from the gauges and did not capture Petitioner. (Lodgment 18, Vol. 3 at 253-54.) Petitioner further contends there were surveillance cameras outside the store and trial counsel should have obtained the tapes. [Doc. 28-4 at 4-6.] Even assuming there were outdoor cameras which would have captured Petitioner in the parking lot, given the fact that there was no dispute Petitioner used force and trial counsel's theory that the force used by Petitioner was self-defense, it would have been reasonable for trial counsel to decide the outdoor footage would not have been helpful. Petitioner even concedes any footage would have shown him pushing the loss prevention officer. Traverse at 30 (stating the footage would show that "I push [sic] the security guard in relation to the circumstances")

Furthermore, criminal defendants do not have a constitutional right to have appointed appellate counsel raise every nonfrivolous issue they suggest. *Jones v. Barnes*, 463 U.S. 745, 754 (U.S. 1983). The Supreme Court noted "experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker issues on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-752.

Letters from appellate counsel to Petitioner make clear the fact that appellate counsel pursued the claim, making inquiries and requesting relevant information from trial counsel.[10]  Given the fact that appellate counsel did raise an ineffectiveness of trial counsel claim based on trial counsel's failure to request a lesser included offense instruction, it seems likely appellate counsel simply made a tactical decision to forgo the failure to investigate claim.  Doing so would have let him focus on the claims presented herein as Claim One through Ten.

For the foregoing reasons, it is **RECOMMENDED** the court **DENY** Claim Eleven.

**11.    Claim Twelve:  Due Process and Jury Coercion**

Although Respondent interprets takes Claim Twelve as raising the same issue as Claim One ("juror number 10 was coerced by the other jurors into voting for guilt"), Claim Twelve instead focuses on the conduct of the trial court.  (Answer at 32.)  Specifically, Petitioner alleges the trial court coerced Juror 10 into casting a guilty vote on the robbery count in violation of his Sixth and Fourteenth Amendment rights to an impartial jury.  [Doc. 28-4 at 29.]

**i.    Petitioner is not entitled to relief because there was no coercion under the totality of the circumstances**

Petitioner first argues the trial court should not have had Juror 10 continue deliberations because it knew the numerical division of the jury at the time it did so.  [Doc. 28-4 at 30.]  Federal courts are prohibited from inquiring into the numerical division of a jury.  *Brasfield v. U.S.*, 272 U.S. 448 (1926).  However, the *Brasfield per se* prohibition is not applicable to habeas petitions because the rule does not arise out of the Constitution, but out of the supervisory power of the Supreme Court.  *Lowenfeld v. Phelps,* 484 U.S 231, 239 (1988) (noting "[o]ur decision in *Brasfield* makes no mention of the Due Process Clause or any other constitutional provision. The Federal Courts of Appeals have uniformly rejected the notion that *Brasfield's* per se reversal approach must be followed when reviewing state proceedings on habeas corpus."); *Early v. Packer,* 537 U.S. 3, 10 (2002); *Locks v. Sumner*, 703 F.2d 403, 406 (9th Cir. 1983).

---

[10] While Petitioner claims trial counsel never responded to appellate counsel's requests, the letter Petitioner attaches simply shows trial counsel had not yet responded.  Appellate counsel writes, "I also indicated that I had some questions about what exactly happened with the video surveillance tapes and whether or not that information was subpoenaed or, at the least, informally requested. Ms. Gilliam is usually pretty good about returning my calls so I would expect to hear back from her sometime in the near future." (Traverse at Exhibit 3.)

A trial court's knowledge of a jury's numerical division is simply part of the totality of the circumstances test a reviewing court must apply when addressing a claim of jury coercion. *Lowenfield,* 484 U.S. 231, 237 (1988) ("Our review of petitioner's contention that the jury was improperly coerced requires that we consider the supplemental charge given by the trial court "in its context and under all the circumstances"); *Early v. Packer*, 537 U.S. 3, 10 (2002) (applying totality of circumstances test of *Lowenfield* to a claim of jury coercion); *Locks v. Sumner*, 703 F.2d 403, 406 (9th Cir. 1983) ("[a]lthough we decline to hold that the rule in *Brasfield* is of constitutional dimension, we do not wish to imply that an inquiry into the jury's balloting will never infringe on a defendant's right to an impartial jury and fair trial. . . to determine whether such coercion of the jury's deliberative process occurred, the inquiry must be viewed in the light of the context in which it was made, not in isolation"); *Jimenez v. Myers*, 40 F.3d 976, 980 (9th Cir. 1993) (noting "a trial court's neutral inquiry into the division of the jury without other circumstances suggestive of coercion does not deprive a defendant of due process" in a federal habeas review of a state court conviction.)

Petitioner also appears to argue the trial court's conduct amounted to a *de facto Allen* charge.[11] [Doc. 28-4 at 32.] An *Allen* charge is "the generic name for a class of supplemental jury instructions given when jurors are apparently deadlocked . . . in their mildest form, these instructions carry reminders of the importance of securing a verdict and ask jurors to reconsider potentially unreasonable positions." *United States v. Mason*, 658 F.2d 1263, 1265 (9th Cir. 1981).  The United States Supreme Court has upheld the giving of *Allen* charges, while noting that they may raise concerns of jury coercion in some instances.  The Ninth Circuit has held "so long as the defendant has offered facts that fairly support an inference that jurors who did not agree with the majority felt pressure to give up their conscientiously held beliefs in order to secure a verdict, we must proceed to the *Allen* charge analysis." *Weaver v. Thompson,* 197 F.3d 359, 365 (9th Cir. 1999).

In *Jimenez v. Myers*, the Ninth Circuit found a trial court to have given a de facto *Allen* charge where there had been two impasses.  The court asked for the progression in the voting at each impasse to determine whether there had been movement, and told the jury to continue deliberating. *Jimenez v. Myers,* 40 F.3d 976, 980 (9th Cir. 1993).  "In view of the disclosure after the second impasse that

---

[11]  All the cases cited by Petitioner are cases in which an *Allen* charge was either issued directly or indirectly.

only one juror remained in the minority and the trial court's implicit approval of 'movement' toward unanimity, the court's instructions to continue deliberating until the end of the day sent a clear message that . . . the hold-out juror was to cooperate in the movement toward unanimity." *Id.* at 981. Although Petitioner argues his position is the same as that of the Petitioner in *Jimenez*, there are several important differences between the facts in Petitioner's case and the facts in *Jimenez*. [Doc. 28-4 at 32.]

First, while Petitioner argues "the holdout juror was being individually urged to reconsider her vote", an examination of the record shows otherwise. Indeed, the trial court's comments to Juror 10 (that it did not want a verdict based on coercion and that it wanted her to "stand by the facts" as she found them) were made to ensure that she did not capitulate to the others under duress. *Cf. Jimenez* at *980* (noting the trial court failed to give counterbalancing instruction to the hold-out juror "not to surrender his or her sincere convictions.") Second, contrary to Petitioner's contention that "the trial court sent a clear message that the trial court endorsed" a conviction, the trial judge even went so far as to inform Juror 10 that a hung jury was an acceptable result. *See United States v. Green*, 962 F.2d 938, 944 (9th 2002) ("In this case, it would be hard to imagine a less coercive supplemental instruction. Jurors were not told they had a duty to reach a verdict. Rather, they were informed a mistrial was a possibility if they could not agree. Jurors were also not specifically told to reconsider their positions in light of the views of other jurors, as a typical "Allen charge" communicates").

Petitioner further contends Juror 10 was coerced because the trial court did not excuse her as she had requested. Petitioner states "Juror No. 10 has repeatedly expressed herself to the trial court several times that she has done the best of her ability on 3-19-2003. The facts are clear the hold-out juror has done her absolute best . . . there's no more you could expect." [Doc. 28-4 at 29.] However, an examination of the record demonstrates that Juror 10 did not express the feeling that further deliberations were fruitless. Indeed, when the court asked Juror 10 whether she could continue deliberating while standing firm to what she believed was the right position, she replied that she could.

After considering the totality of the circumstances, and in light of Juror 10's letter stating she came to a decision after another juror explained the facts in a manner acceptable to her, it cannot be said that the trial court coerced Juror 10 into voting guilty on the robbery charge. *See, e.g., Early v.*

*Packer*, 537 U.S. 3 (2002), (noting state court determination that there was no jury coercion was not unreasonable application of clearly established federal law where: (1) hold-out juror sought to be dismissed; (2) jury note discloses 11-1 split and stated jury could no longer deliberate; (3) judge tells jurors they can disagree, but must deliberate; (4) judge asks for the last vote count; (5) judge orders further deliberations; (6) hold-out again seeks to be dismissed and claims the rest of the jury is disrespectful); *United States v. Changco*, 1 F.3d 837 (9th Cir. 1993) (finding no jury coercion where (1) jury sent note to judge stating there was one hold-out juror; (2) revealed numerical division to judge; (3) hold-out juror sent note to judge claiming she was being intimidated, threatened, and physically harassed; (4) court instructs jurors to behave civilly and admonishes them to not surrender strongly held beliefs). Thus, it is **RECOMMENDED** the court **DENY** Claim Twelve.

### 12. Claim Thirteen:  Ineffective Assistance of Appellate Counsel Claim

In Claim Thirteen, Petitioner contends appellate counsel was ineffective for failing to raise a claim of jury coercion.  [Doc. 28-4 at 34.]  Petitioner cannot show he was prejudiced by appellate counsel's failure to raise the claim because, as noted in the immediately preceding section regarding juror coercion, the claim is without merit. Thus, it is **RECOMMENDED** the court **DENY** Petitioner's Claim Thirteen.

### 13. Claim Fourteen and Fifteen: Ineffective assistance of appellate counsel and ineffective assistance of trial counsel

In Claim Fourteen, Petitioner claims appellate counsel was ineffective for failing to raise on appeal "a claim challenging the prosecution's use of an improper inference."  [Doc. 28-4 at 37.] Petitioner argues that the prosecutor introduced evidence that a gauge was recovered and impounded by Detective Nguyen but failed to establish "the circumstances under which the gauge was found and that tends [sic] to show the gauge that was found had any relation to the alleged robbery." [Doc. 28-4 at 39.]

Petitioner contends  his right to due process was violated because there was no "rational connection between the facts proved and the facts inferred" with respect to the gauge  [Doc. 28-4 at 38.]  Petitioner argues "the evidence was fatal and created an extreme prejudice against petitioner because more than likely the jury followed the court's instruction to take notes of witnesses testifying

in reference from police reports, from which the jury could reasonably have inferred from testimony that the gauge impounded by Dt. Nguyen was one and the same as the gauge petitioner was convicted of 2d [sic] Degree robbery for allegedly taking." [Doc. 28-4 at 38.]

Petitioner states that the "alleged stolen item was neither found in Petitioner's truck nor in his possession but the stolen gauge was apparently recovered and impounded by Detective Nguyen two days after petitioner was arrested on 8/12/02. This evidence was presented to the jury by testimony of Officer Winrow." [Doc. 28-4 at 38.] Petitioner further argues the testimony of Officer Winrow would have led the jury to infer that "the gauge impounded by Dt. Nguyen was one and the same as the gauge petitioner was convicted of 2d Degree Robbery for allegedly taking." [Doc. 28-4 at 38.]

In Claim Fifteen, Petitioner claims his appellate counsel was ineffective for not raising on appeal the claim that his trial counsel was ineffective for failing to clarify that the impounded gauge was not connected to Petitioner. [Doc. 28-4 at 43.] Petitioner argues trial counsel's failure to clarify that the second gauge was not connected to him placed "the burden on Petitioner to show that the gauge impounded by Dt. Nguyen was not the gauge Petitioner is accused of stealing." [Doc. 28-4 at 43.]

### i. **Petitioner is not entitled to relief because Claims Fourteen and Fifteen are meritless**

Petitioner's Claims Fourteen and Fifteen are meritless and mistaken because the record does not indicate that an auto gauge was impounded. While Petitioner seems to believe an impounded gauge was introduced as Defense Exhibit F during Officer Winrow's testimony, a full review of the testimony shows otherwise. While Officer Winrow did state that the property form attached to Defense Exhibit F referred to the item impounded as an auto dashboard gauge, the rest of his testimony clarifies the fact that Defense Exhibit F was actually the empty box for the auto gauge. Winrow's testimony in pertinent part was as follows:

Gilliam [Defense Counsel]: I'm handing you Defense Exhibit F for identification . . . there seems to be a ticket on the bag. What is that ticket?

Officer Winrow: That's a property form.

Gilliam: Okay. And what is on the ticket?

Winrow:  Basically, it's written that this is a property form from the San Diego Police Department.  What's written on it are the contents, the case number, who impounded it and the date.  According to the tag, it says *auto dashboard gauge impounded by Detective Nguyen*..

While Petitioner focuses on this description of Defense Exhibit F, the rest of the testimony reveals the exhibit was simply the empty auto gauge box:

Gilliam:  What does that appear to be that you just took out of Defense Exhibit F?

Winrow:  This is the *box* for the auto gauge that was stolen at Wal-Mart.

And again:

Gilliam:  And the *box* you have in front of you, is there anything in it?

Winrow:  It's pretty much empty, except for some – a little bit of packaging.

(Lodgment 18, Vol. 3 at 347-350.)(emphasis added.)

Thus, there is no basis for Petitioner's claims and it is **RECOMMENDED** the court **DENY** relief as to Claims Fourteen and Fifteen.

**14.** **Claim Sixteen: Ineffective Assistance of Appellate Counsel**

In Claim Sixteen, Petitioner claims his appellate counsel was ineffective for failing to exhaust a claim in the California Supreme Court that his trial counsel was ineffective for failing to request a petty theft instruction.  [Doc. 28-4 at 47.]  Petitioner contends he was prejudiced because, hypothetically, the claim could have been procedurally barred if he had not returned to state court to exhaust the claim.  [Doc. 28-4 at 48.]

**i.** **Petitioner is not entitled to relief because he cannot show prejudice**

Petitioner, however, cannot show prejudice as required under *Strickland* for the same reasons as discussed in Claim Six.  *Strickland v. Washington*, 466 U.S. 668, 691 (1984).  There is no dispute that Petitioner pushed loss prevention officer Shawcroft in the parking lot of the Walmart.  Even if trial counsel had requested a petty theft instruction, the instruction was not warranted because it was clear Petitioner had used force.  Furthermore, even had the instruction been given, it would not have affected the verdict since a jury would not have been able to come to the conclusion that Petitioner

1   was guilty of only petty theft.  Thus, appellate counsel's failure to raise the claim did not prejudice

2   Petitioner and it is **RECOMMENDED** the Court **DENY** Petitioner's Claim Sixteen.

3   **15.**    **Claim Seventeen: Ineffective Assistance of Trial Counsel**

4         Claim Seventeen raises the same ineffective assistance of counsel claims raised in Claim Six

5   with the addition that Petitioner argued he took only an instruction manual pushed loss prevention

6   officer Shawcroft after he stopped and attempted to comply with her requests.  [Doc. 28-4 at 50-51.]

7         Claim Seventeen fails for the same reasons set out in the discussion of Claim Six.  Contrary

8   to Petitioner's beliefs, the lesser included offense instruction was dependent on the use of force, not

9   on whether he had taken anything from the store.  Because Petitioner pushed Shawcroft, no petty theft

10  instruction was warranted.  Even if the instruction had been requested, there was no way for the jury

11  to find Petitioner guilty of only petty theft because the push was enough to constitute robbery.  Under

12  the facts, there was no way for the jury to have found Petitioner guilty of only petty theft.  Thus,

13  Petitioner cannot show prejudice as required under *Strickland v. Washington*, 466 U.S. 668, 691

14  (1984) and it is **RECOMMENDED** the Court **DENY** Petitioner's Claim Seventeen.

15  **VI.**

16  **CONCLUSION AND RECOMMENDATION**

17         For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue

18  an Order **DENYING** the Petition for Writ of Habeas Corpus.

19         **IT IS ORDERED** that no later than **June 16, 2008** any party to this action may file

20  written objections with the Court and serve a copy on all parties.  The document should be

21  captioned "Objections to Report and Recommendation."

22         **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the

23  Court and served on all parties no later than **July 7, 2008**.  The parties are advised that failure to

24  file objections within the specified time may result in a waiver of the right to raise those objections

25  ///

26  ///

27  ///

28  ///

1 │ on appeal of the Court's order.  See *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); see also

2 │ *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

3 │            **IT IS SO ORDERED.**

4 │ DATED: May 16, 2008

5 │                                        Hon. William McCurine, Jr.

6 │                                         U.S. Magistrate Judge
                                        United States District Court