| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JOEL B. HENDERSON, | | CASE NO. 06CV1545 JAH (WMc) |
| | Petitioner, | **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE: (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS ON PETITIONER'S FALSE EVIDENCE CLAIM [DOC NOS. 62, 64]; AND (2) DENYING PETITIONER'S MOTION FOR EVIDENTIARY HEARING [DOC. NO. 66]** |
| vs. | | |
| MATTHEW CATE, Secretary of the California Department of Corrections, | | |
| | Respondent. | |

## I.  INTRODUCTION

Petitioner, JOEL B. HENDERSON, is a state inmate, proceeding *pro se* and *in forma pauperis*, challenging his San Diego Superior Court conviction with a habeas corpus petition pursuant to 28 U.S.C. §2254.  After full briefing by both parties, a Report and Recommendation was issued to District Judge John A. Houston recommending the petition be denied. [Doc. 50].  In Petitioner's Objections to the Report and Recommendation, Petitioner noted a false evidence claim had not been addressed by Respondent. [Doc. 58].  Accordingly, the matter was remanded for consideration of Petitioner's false evidence claim. [Doc. 62].  Petitioner then filed a Supplement to the First Amended Petition [Doc. 64] and a Motion for an Evidentiary Hearing [Doc. 66]. Respondent has filed a Reply to the Supplement to the First Amended Petition. [Doc. 68].

- 1 -                                                          06cv1545 JAH (WMc)

After reviewing the briefs and all supporting documents, the Court recommends the First Amended Petition and the Motion for an Evidentiary Hearing be **DENIED** for the following reasons.[1]

## II. STATEMENT OF FACTS

The Statement of Facts as set forth in the Court's May 16, 2008 Report and Recommendation are as follows:

"<u>A. Prosecution Case</u>

On August 12, 2002, Melanie Shawcroft, a loss prevention officer at a Wal-Mart store in San Diego, saw Henderson and his companion Sherrie Pulliam in the garden area of the store. Shawcroft had seen Pulliam in the store on prior occasions.

Shawcroft saw Henderson and Pulliam leave the garden area, where they had been looking at plants, and go to the automotive section of the store. Shaw unobtrusively followed them to the automotive section, where she saw Pulliam hand Henderson a packaged automobile gauge. Shawcroft saw Henderson, with Pulliam's help, open the package and put the gauge in his right back pocket. Shawcroft also saw Henderson put the empty package back on the shelf.

Henderson and Pulliam left the store without going through any sales counters and without paying for the gauge. Outside the store, Shawcroft, who by that time was accompanied by another Wal-Mart employee, Israel Gutierrez, attempted to stop Henderson and Pulliam. She asked Henderson to return to the store with her and Henderson refused. When Shawcroft touched Henderson on the wrist, he pushed her in the chest with both his hands. Shawcroft is 5-feet, 6-inches tall and at the time weighed 112 pounds; Henderson is 5-foot, 9-inches tall and weighs 210 pounds. Although Shawcroft had pulled out her handcuffs, she decided that she would not be able to get them on Henderson and put them away. As Shawcroft put the handcuffs away, Pulliam told Shawcroft "Bitch, I'm going to kick your ass."

After Henderson pushed Shawcroft, he and Pulliam continued walking to their vehicle and Shawcroft again tried to grab Henderson's wrist. He again pushed Shawcroft in the chest with both his hands. He then pulled his arm back and made a fist. Because Shawcroft thought Henderson was about to hit her, she grabbed Henderson's shirt and attempted to pull herself as close to him as possible so that he would not be able to hit her with a complete swing of his arm.

At that point Gutierrez tried to intervene and grab Henderson's hand. Henderson told Gutierrez: "I have a knife. Don't even try it." Henderson then successfully pulled away from Shawcroft, but ripped his shirt in doing so. Henderson and Pulliam got in their truck and left the store parking lot. Two small children were in the truck.

Shawcroft returned to the automotive section of the store and retrieved the empty package. She then called the police and gave them the license number of the truck Henderson was driving. Police went to the address of the registered owner of the truck, where they found Henderson, Pulliam and two children about 10 feet from the truck. Shawcroft and Gutierrez went to the address and identified Henderson and Pulliam as the individuals involved in the theft and altercation outside the store.

---

[1] The District Court Judge has not yet issued a ruling on this Court's Report and Recommendation of May 16, 2008. Consequently, that Report and Recommendation is incorporated herein as to Petitioner's claims one to seventeen. [See Doc. 50].

> Police found an instruction manual for a gauge kit in the cab of the truck and two knives in the bed of the truck. Police also found 284 grams of marijuana in a backpack that was in a trailer attached to the truck.
>
> B. Defense Case
> A Wal-Mart customer, Randolph Heilman, was in the parking lot at the time Shawcroft attempted to stop Henderson. He saw Pulliam yell at Shawcroft and saw Henderson pull some papers from his pocket and try to show them to Shawcroft. Heilman saw Shawcroft attempt to handcuff Henderson and saw Henderson raise his arm in what Heilman thought was a defensive motion. Heilman then saw Shawcroft lunge at Henderson. Heilman believed Shawcroft was the aggressor in the altercation. Heilman did see what he thought was a shiny torque driver in Henderson's back pocket.
> Pulliam testified she and Henderson went to Wal-Mart to get plant "care cards" from the garden department of the store. According to Pulliam, in addition to the care cards, Henderson took an instruction manual out of an empty package in the store. She also testified Henderson had a tool he used on his chain saws in his back pocket. Finally, Pulliam testified that when Henderson would not allow himself to be handcuffed, Shawcroft lunged at him and ripped his shirt."

[Doc. 50 at 4-5].

## III. PROCEDURAL HISTORY

*A. State Court Proceedings*

Petitioner was convicted of second degree robbery in the San Diego Superior Court on October 2, 2003. [Lodgment 17, Clerk's Transcript at 84]. On October 3, 2003, Petitioner was sentenced to fifteen years in prison. [Lodgment 18, Reporter's Transcript, Vol. 6 at 682-83]. Immediately thereafter, Petitioner simultaneously filed an appeal and a petition for writ of habeas corpus with the California Court of Appeal. On February 18, 2005, the California Court of Appeal affirmed the Superior Court conviction and denied the habeas petition. A subsequent petition for review to the California Supreme Court, filed on March 29, 2005, was denied on May 11, 2002.

*B. Federal Court Proceedings*

On July 18, 2005, Petitioner filed his first Petition for Writ of Habeas Corpus with this court. [See Case No. 05cv01449 LAB (NLS), Doc. 1]. Petitioner, thereafter, filed a Motion for Stay and Abeyance in order to pursue three new claims (one concerning prosecutorial misconduct for the deliberate suppression of allegedly exculpatory evidence) in state court. [See Case No. 05cv01449 LAB (NLS), Doc. 9]. The Report and Recommendation of Magistrate Judge Stormes recommended denying the motion since Petitioner failed to demonstrate good cause. [See Case No. 05cv01449 LAB (NLS), Doc. 13 at 5]. Petitioner voluntarily filed a motion to dismiss without prejudice in order to exhaust his, then, unexhausted claims.[See Case No. 05cv01449 LAB (NLS),

1  Doc. 15]. On November 28, 2005, this motion was granted, and the petition was dismissed
2  without prejudice. [See Case No. 05cv01449 LAB (NLS), Doc. 16].
3       On July 31, 2006, Petitioner filed another Petition for Writ of Habeas Corpus with this
4  court. [Doc. 1]. As this petition again contained exhausted and unexhausted claims, Petitioner
5  filed a motion to stay and abey on October 4, 2006[2] (hereafter "1st Stay & Abey") in order to
6  exhaust his unexhausted claims in state court. [Doc. 8]. While the motion was pending, the
7  unexhausted claims were exhausted in state court. [Doc. 19]. Consequently, on May 4, 2007, this
8  Court recommended the motion be denied as moot. [Doc. 24]
9       On April 12, 2007, Petitioner filed an additional motion to stay and abey (hereafter "2nd
10  Stay & Abey") in order to exhaust two new claims (one of which is the false evidence claim) in
11  state court. [Doc. 22]. Petitioner, concurrently, filed another Petition for Writ of Habeas Corpus
12  with this court. [see Case No. 07cv0665 W (LSP), Doc. 1]. On July 11, 2007, this petition was
13  construed to be an amended petition[3] in the instant matter and filed as such. [Docs. 27 & 28; see
14  Case No. 07cv0665 W (LSP), Doc. 8]. On August 20, 2007, this Court recommended granting
15  Petitioner's 2nd Stay & Abey as the false evidence claim was not plainly meritless. [Doc. 29]. The
16  District Court Judge agreed with the recommendations of Magistrate Judge McCurine on both stay
17  & abey motions and, on September 20, 2007, denied Petitioner's 1st Stay & Abey while granting
18  Petitioner's 2nd Stay & Abey. [Doc. 32].
19  ///
20  ///
21  ///

---

[2] Filed *nunc pro tunc* on September 26, 2006.

[3] This Petition alleged seventeen (17) grounds for relief which were set forth and considered in the original Report and Recommendation. [Doc. 50]. A second, independent review of the Petition uncovered Petitioner's false evidence claim which was not set forth as an independent ground for relief, but imbedded within Petitioner's Eleventh (11th) Claim—ineffective assistance of appellate counsel in failing to raise, on appeal, a claim for ineffective assistance of trial counsel for failing to conduct proper factual investigations and failing to properly prepare for trial. [Doc. 28 at 126, 131, 145-46 (page citations based on Court's CM/ECF pagination of entire document)]. The absence of the claim in the Petition was also noted by the District Court Judge. [Doc. 62, Order Remanding Pet. at 2 fn.2]. Accordingly, this Court's consideration of Petitioner's false evidence claim will be based on Petitioner's Supplement to the Amended Petition for Writ of Habeas Corpus. [Doc. 64].

|   |   |
|---|---|
| 1 | The California Court of Appeal, on August 30, 2007, summarily denied habeas relief to Petitioner on his new claims[4]. The California Supreme Court issued a silent denial of habeas relief on October 31, 2007. [Doc. 35]. |

Respondents filed a Response to the First Amended Habeas Petition on January 14, 2008. [Doc. 37]. Petitioner filed a Traverse on March 6, 2008 (filed *nunc pro tunc* on March 3, 2008), which specifically noted Respondent's failure to address Petitioner's false evidence claim. [Doc. 47]. On May 16, 2008, this Court issued its Report and Recommendation denying the habeas petition. [Doc. 50]. An Objection to the Report and Recommendation was filed by Petitioner on June 23, 2008, which also specifically noted this Court's silence as to Petitioner's false evidence claim. [Doc. 58]. After consideration by the District Court Judge Houston, an order was issued on December 1, 2008, remanding the matter back to Magistrate Judge McCurine for further proceedings on Petitioner's false evidence claim. [Doc. 62]. Pursuant to the same order, on January 5, 2009, Petitioner filed a Supplement to his First Amended Petition. [Doc. 64]. Concurrently, Petitioner filed a Motion for an Evidentiary Hearing. [Doc. 66]. On February 23, 2009, Respondent filed a Response to Petitioner's Supplement to First Amended Petition for Writ of Habeas Corpus. [Doc. 68].

## IV.  STANDARD OF REVIEW

The general scope of review for federal habeas corpus petitions is set forth in 28 U.S.C. §2254, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To merit relief, the state court adjudication must be either contrary to or involve an

---

[4]This California Court of Appeal opinion (Case No. D051275) was never lodged or provided by either party. The disposition of the case is available on the Court of Appeal website (*available at* http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=41&doc_id=735184&doc_no=D051275).

1 unreasonable application of clearly established federal law. "Clearly established federal law" is
2 determined by viewing the U.S. Supreme Court's decisions at the time of the conviction. *Lockyer*
3 *v. Andrade*, 538 U.S. 63, 71-72 (2003). Opinions of the Ninth Circuit may also be relied upon as
4 persuasive authority to determine the substance and scope of Supreme Court case law. *Clark v.*
5 *Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

6 The state court's adjudication of an issue will be deemed "contrary to" clearly established
7 federal law if either: 1) a different rule is applied or 2) the correct rule is identified but mis-applied
8 in such a way that a different result is reached despite being based on indistinguishable facts.
9 *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Lockyer*, 538 U.S. at 73; *Clark*, 331 F.3d at
10 1067. Alternatively, a State court's adjudication will be deemed to have involved an
11 "unreasonable application of" clearly established federal law if the correct legal rule is identified
12 but was either: 1) applied unreasonably to the facts, 2) unreasonably extended to govern the facts,
13 or 3) unreasonably constrained so as not to apply to the facts. *Williams*, 529 U.S. at 407-08.

14 Additionally, a federal reviewing court may also grant habeas relief if the state court's
15 decision was based on an unreasonable determination of the facts in light of the evidence
16 presented. In a petition seeking relief under this standard, the petitioner bears the burden of
17 proving the factual determinations of the state court were objectively unreasonable. *Miller-El v.*
18 *Cockrell*, 537 U.S. 322, 340 (2003).

19 When a petition for review is made to the highest state court and that court responds with a
20 silent denial, the federal habeas court can "look through" the silent denial to the last reasoned state
21 court decision in order to consider whether habeas relief is warranted. *Ylst v. Nunnemaker*, 501
22 U.S. 797, 803-04 (1991). In connection to Petitioner's false evidence claim, the last reasoned state
23 court decision available was issued by the California Court of Appeal, which denied the petition
24 on procedural grounds.

25 ///
26 ///
27 ///
28 ///

## V.  DISCUSSION

*A.  Petitioner's arguments*

Petitioner initially argues Respondent has waived any right to contest the false evidence claim. [Doc. 64, Supp. Amended Pet. at 1[5]]. Petitioner asserts Respondent was aware of the false evidence claim since both Petitioner and Respondent had considered it in connection to Petitioner's 2nd Stay and Abey. [Doc. 64, Supp. Amended Pet. at 2-4]. Since Respondent failed to address the claim in Respondent's Answer to the First Amended Petition, Petitioner asserts Respondent has waived the right to contest the allegations of the claim. [Doc. 64, Supp. Amended Pet. at 4-5].

Regarding the substance of the claim, Petitioner argues the conviction was based on falsified evidence, thereby depriving him of his Due Process rights under the Fourteenth Amendment. [Doc. 64, Supp. Amended Pet. at 8]. Specifically, Petitioner points to two different, yet related, facts. First, Petitioner alleges the impound documentation for the empty gauge box, as testified to by Officer Winrow, was falsified. [Doc. 64, Supp. Amended Pet. at 9-10]. Petitioner asserts normal impound procedure requires an officer to fill out a pre-numbered impounded evidence property tag form. [Doc. 64, Supp. Amended Pet. at 10; Doc. 64-2, Ex. to Supp. Amended Pet. at 20-21]. However, Petitioner highlights the fact the empty gauge box, which was impounded two days after his arrest, bore an impound tag number which was chronologically lower than the impound tag numbers for evidence confiscated at the time of his arrest. [Doc. 64, Supp. Amended Pet. at 10]. Petitioner alleges such a situation is impossible and, therefore, indicative of falsified evidence. [Doc. 64, Supp. Amended Pet. at 10]. Second, Petitioner alleges People's Exhibit 14 (a photograph of the empty gauge box) was fabricated. [Doc. 64, Supp. Amended Pet. at 12]. In support of this allegation, Petitioner points to the jury's question of whether the photograph depicted the empty box exactly as it was found in the store, and the prosecutor's inability to answer the question. [Doc. 64, Supp. Amended Pet. at 13]. According to Petitioner, this fact indicates the fabricated nature of the photograph, since answering the question honestly would have revealed its altered nature. [Doc. 64, Supp. Amended Pet. at 13].

---

[5]Page citations in this document will be based on the Court's CM/ECF pagination.

*B. Respondent's Reply*

Respondent asserts Petitioner is not entitled to relief on the false evidence claim since it was not properly presented in the First Amended Petition and does not state a cognizable claim for habeas relief. [Doc. 68, Resp. to Supp. Amended Pet. at 2-3]. In particular, Respondent asserts waiver does not apply since Respondent is not bound to reply to claims not stated in the petition before it. [Doc. 68, Resp. to Supp. Amended Pet. at 2]. Respondent further asserts no cognizable claim has been asserted by Petitioner's conclusory allegations concerning this false evidence claim; Petitioner did not provide any specific facts to support his claim. [Doc. 68, Resp. to Supp. Amended Pet. at 3].

*C. Petitioner is not entitled to habeas relief on his false evidence claim since adjudication in the state court was neither contrary to, nor an unreasonable application of, clearly established federal law.*

Clearly established federal law holds that a habeas petitioner may not abuse the writ by engaging in piecemeal litigation of his claims by presenting, on a successive habeas petition, claims which could have been presented in a prior petition. *McCleskey v. Zant*, 499 U.S. 467, 489 (1991). Unless the petitioner demonstrates good cause for his failure to previously assert the claim and prejudice therefrom, the petitioner will not be entitled to a review of such claims. *Id.* at 494.

In denying state habeas relief on Petitioner's newest two claims, the California Court of Appeal held: "Petitioner's largely unintelligible claim regarding falsified evidence is denied because it could have been raised in his prior appeal, or in his two prior habeas petitions before this court, and petitioner has not established an exception to the procedural bar."[6] Although the appellate court did not provide a detailed discussion of the applicable law, the basis for its denial on procedural grounds is in conformity with governing federal law.

///

///

///

---

[6] In re Joel Henderson on Habeas Corpus, No. D051275 (Cal. Ct. App. Aug. 30, 2007) (*available at* http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=41&doc_id=735184&doc_no=D051275).

1   Petitioner had at least three different opportunities to present his claim to the California
2   Court of Appeal.[7]  The appellate court recognized that, if Petitioner was allowed to present his
3   claims in such a piecemeal manner, it was incumbent on Petitioner to demonstrate "an exception to
4   the procedural bar."  This standard precisely conforms with federal law requiring habeas
5   petitioners to demonstrate cause and prejudice in order to merit access to federal review on a
6   subsequent petition. *McClesky*, 499 U.S. at 494 (holding after government pleads abuse of the
7   writ, the burden to disprove abuse is placed on the petitioner to "show cause for failing to raise
8   [his claim earlier] and prejudice therefrom.").

***D. Although Petitioner has not properly raised his false evidence claim in his First Amended Petition, the Court should consider the claim on its merits.***

Petitioner asserts Respondent's failure to respond to the false evidence claim amounts to a "waiver," thereby establishing Petitioner's presentation of the underlying facts to be undisputed. [Doc. 64, Supp. Amended Pet. at 1-5].  Respondent replies by asserting Petitioner has failed to properly raise his false evidence claim in his Petition. [Doc. 68, Resp. Supp. Amended Pet. at 2].

In a habeas proceeding before the United States District Court, the Petitioner initially bears the burden of asserting all grounds for relief, and supporting facts, in the petition. RULES GOVERNING §2254 CASES IN THE UNITED STATES DISTRICT COURTS, R. 2.  Respondent, thereafter and if ordered by the court, must file an answer addressing the allegations in the petition. RULES GOVERNING §2254 CASES IN THE UNITED STATES DISTRICT COURTS, R. 5.  Consequently, the scope of Respondent's response, and the scope of the court's inquiry, is normally limited by the grounds asserted in the petition.  However, the court may still review an issue which was not properly briefed if the circumstances suggest a failure to do so would "work a substantial inequity." *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

///
///

---

[7] "We take judicial notice of petitioner's direct appeal No. D043082, companion habeas petition No. D044061, and second habeas petition No. D049335." In re Joel Henderson on Habeas Corpus, No. D051275 (Cal. Ct. App. Aug. 30, 2007) (*available at* http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=41&doc_id=735184&doc_no=D051275).

1       Although Petitioner was aware of the underlying factual basis for his false evidence claim
2  as early as October 17, 2005[8] and subsequently had multiple opportunities to exhaust that claim in
3  state court, Petitioner's First Amended Petition does not contain a false evidence claim as a
4  proposed ground for relief. [Doc. 28].  However, as the parties have considered the issue in
5  connection with Petitioner's 2nd Stay and Abey and since the instant Petition represents
6  Petitioner's attempt to consolidate all his claims, in an abundance of caution, the Court should
7  consider the claim on its merits. *See Coleman v. Thompson*, 501 U.S. 722, 735 (1991) (holding, in
8  the context of procedural default in state courts, the federal habeas court may consider the merits
9  of the petition if it is unclear whether the state court relied on an independent and adequate state
10 procedural ground);  *Martinez*, 951 F.2d at 1157 (holding waiver for failing to raise a claim is only
11 appropriate if circumstances do not show a substantial inequity would follow).

***E. Petitioner has failed to state a cognizable ground for federal habeas relief.***

        In order to validly state a claim for habeas relief, Petitioner must set forth sufficient facts to
support each and every claim. RULES GOVERNING §2254 CASES IN THE UNITED STATES DISTRICT
COURTS, R. 2(c)(2).  "Mere conclusory allegations which are not supported by facts will not
suffice." *Schlette v. California*, 284 F.2d 827, 834 (9th Cir. 1960).  Such a requirement reflects a
concern for the respect of state trial court adjudication by imposing on the habeas petitioner the
burden of alleging and proving primary facts which justify federal intervention in a state-resolved
case. *See Darr v. Burford*, 339 U.S. 200, 218 (1950) (overruled on other grounds by *Fay v. Noia*,
372 U.S. 391 (1963)); *see also Harlan v. McGourin*, 218 U.S. 442, 448 (1910).  Federal habeas
review is not a forum for attacking the "sufficiency of evidence and the veracity of witnesses."
*Schlette*, 284 F.2d at 834.

        Petitioner offers conclusory statements and inferences, not facts, in an attempt to support
his false evidence claim.  Petitioner asserts the documentation accompanying impounded evidence,
as presented through the testimony of Officer Winrow, was falsified, particularly with respect to
the documentation for the impounded empty gauge box. [Doc. 64, Supp. Amended Pet. at 8].

---

[8]*See* Case No. 05cv1449, Doc. 9 (stating "[a] while after petitioner had filed his habeas petition in federal court by grace petitoner had received the needed information to support his claim of newly discovered evidence.").

1  However, Petitioner's inference about the impossibility of a later impound tag bearing a number
2  numerically lower than an earlier impound tag is pure speculation and is not supported by any
3  evidence.  Petitioner relies on the impound procedural rules of the police department for this
4  proposition but nothing in the procedures state impound tag numbers must numerically increase.
5  [See Doc. 64-2, Ex. Supp. Amended Pet. at 20-21].  Consequently, Petitioner has failed to meet his
6  burden. *See Schlette*, 284 F.2d at 833-34 (holding "[a] conviction after public trial in a state court
7  by verdict...places the burden on the accused to allege and prove primary facts, not inferences, that
8  show, notwithstanding the strong presumption of constitutional regularity in state judicial
9  proceedings that in his prosecution the state so departed from constitutional requirements as to
10 justify a federal court's intervention to protect the rights of the accused.").

11  With respect to People's Exhibit 14, Petitioner asserts the falsified nature of the photograph
12 is revealed in the prosecutor's failure to answer the jury's question. [Doc. 64, Supp. Amended Pet.
13 at 12-13].  When the jury asked whether the photograph of the empty box was taken exactly as
14 found or if something was removed, the prosecution told the Court the current witness would not
15 be able to answer the question but a later witness should have more knowledge. [Lodgment 18,
16 Rep. Trans. Vol. 3 at 280-83].  From this inability to answer the question, Petitioner infers the
17 evidence was altered and constituted false evidence.  However, Petitioner offers no evidence in
18 support of this conclusion. Contrary to Petitioner's conclusion, the prosecutor's inability to answer
19 was due to the unavailability of Detective Nguyen, the detective who actually took the photograph.
20 [Lodgment 18, Rep. Trans. Vol. 3 at 281-82].  Additionally, no objection was raised by defense
21 counsel when the exhibit was introduced into evidence. [Lodgment 18, Rep. Trans. Vol. 3 at 283].
22 Petitioner's assertion is no more than an evidentiary error claim, which lies outside the scope of
23 federal habeas review. *See Schlette*, 284 F.2d at 835-36 (holding allegation of falsified
24 photographs, which were admitted through stipulation or with proper instructions, raised only a
25 state evidentiary issue only reviewable in state courts).

26 *F.  Petitioner is not entitled to an evidentiary hearing*

27  Petitioner asserts an evidentiary hearing is warranted to expose the falsified nature of
28 evidence used in his prosecution. [Doc. 66, Mot. Evid. Hrg. at 1].  In particular, Petitioner

1 highlights the following trial testimony of Officer Winrow:

3 "A: According to the tag, it says auto dashboard gauge impounded by Detective Nguyen, ID number 3895, on August 13th of – wait. I'm sorry. Wrong date. The date's – it's stapled over.
4 The Court: Sir would you like a staple remover?
Witness: Thank you. It was impounded on August 14th of 2002."

5 [Lodgment 18, Rep. Trans. Vol. 3 at 348].

7    Based on this portion of the trial record, Petitioner asserts there were two separate property tags assigned to the single gauge box. [Doc. 66, Mot. Evid. Hrg. at 2]. Petitioner alleges such a situation could not arise unless departmental procedures concerning impounded evidence were violated. [Doc. 64-2, Ex. Supp. Amended Pet. at 21]. Petitioner further highlights a conflict in the testimony of Officer Winrow and Melanie Shawcroft in an attempt to argue the impound documentation was fabricated just before trial. [Doc. 66, Mot. Evid. Hrg. at 3]. Accordingly, Petitioner asserts an evidentiary hearing is necessary to expose the fabricated nature of the evidence.

   A habeas petitioner is entitled to an evidentiary hearing if he has alleged: 1) facts which, if proven ,would entitle him to relief; and 2) a denial of the opportunity to fully and fairly develop those facts. 28 U.S.C. §2254(e)(2); *Earp v. Ornoski*, 431 F.3d 1158, 1167 (9th Cir. 2005). The facts alleged must be specific facts in order to form the basis of his colorable claim for relief. *Tilcock v. Budge*, 538 F.3d 1138, 1145 (9th Cir. 2008). Mere conclusory allegations will be insufficient to warrant an evidentiary hearing. *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001).

   Petitioner has failed to meet this burden. Petitioner's bare reliance on Officer Winrow's trial testimony is insufficient to merit an evidentiary hearing. Petitioner simply provides one possible interpretation of the trial testimony with no separate evidence in support of his allegation that the impounded gauge box was tagged with two separate impound tags. A competing interpretation may be the staple securing the impound tag to the evidence was located over the date field of the form, thereby obscuring the date and leading Officer Winrow initially to incorrectly read the date. Petitioner offers no additional facts in support of his interpretation which would

justify an evidentiary hearing. *See Gonzalez v. Knowles*, 515 F.3d 1006 (9th Cir. 2008) (holding mere speculation, unsupported by any facts, is insufficient to merit an evidentiary hearing on federal habeas review); *cf., e.g., Hall v. Dir. of Communications*, 343 F.3d 976, 980 (9th Cir. 2003) (noting, during post-trial interview, witness admitted to having fabricated notes relied upon by the prosecution); *Siripongs v. Calderon*, 35 F.3d 1308, 1314 (9th Cir. 1994) (granting an evidentiary hearing since federal habeas petitioner made a colorable claim based on "forensic evidence, the other evidence in the record, the expert affidavits, and the deposition of trial counsel in [the] case"). Further, Petitioner's reliance on any conflict in testimony is misguided; a federal habeas court may not weigh the evidence to make an assessment of the credibility of witnesses, but must defer to the factual findings of the state trial court. *See McClure v. Thompson*, 323 F.3d 1233, 1241 (9th Cir. 2003) (holding, on federal habeas review, findings of fact made after the presentation and weighing of evidence are entitled to special deference and will only be reviewed for clear error). Petitioner has not demonstrated clear error and nothing in the trial record supports such a conclusion of clear error. *See McClure*, 323 F.3d at 1240-41 (holding when "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quoting *U.S. v. Working*, 224 F.3d 1093, 1102 (9th Cir. 2000)). Consequently, Petitioner is not entitled to an evidentiary hearing.

## VI. CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order **DENYING** the Petition for Writ of Habeas Corpus and an Order **DENYING** Petitioner's Motion for an Evidentiary Hearing.

**IT IS ORDERED** that **no later than April 6, 2009** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Supplemental Report and Recommendation."

///
///
///
///

1    **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court
2 and served on all parties no later than **no April 27, 2009.** The parties are advised that failure to
3 file objections within the specified time may result in a waiver of the right to raise those objections
4 on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *see also*
5 *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

6    **IT IS SO ORDERED:**

7 DATED: March 16, 2009

_____
Hon. William McCurine, Jr.
U.S. Magistrate Judge, U.S. District Court